Not for Print or
Electronic Publication

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

RAFAEL BILD,
          Plaintiff,

     -against-

MICHAEL KONIG and ABRAHAM WEIDER,

          Defendants.
----------------------------------------------------------X

OPINION & ORDER
09-CV-5576(ARR)

ROSS, J.

Plaintiff Rafael Bild ("Bild" or "Plaintiff") commenced this action on December 21, 2009 against defendants Michael Konig ("Konig") and Abraham Weider ("Weider" and, together with Konig, "Defendants"), invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, and asserting New York state law claims of breach of contract. Plaintiff amended his complaint on May 27, 2010. Konig and Weider now move to dismiss Bild's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Konig's motion to dismiss is granted and Weider's motion to dismiss is denied.

I.     Factual Allegations[1]

On or about December 31, 1998, Plaintiff entered into a loan agreement (the "Loan Agreement") with Weider, individually and as the corporate officer of Vanderveer Estates Holding, LLC ("Vanderveer" and, together with Weider, the "Borrowers"), by which Plaintiff

---

[1] As is required on a motion to dismiss, the factual allegations in the Amended Complaint, though disputed by Defendants, are accepted to be true for the purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff. They do not constitute findings of fact by this court.

agreed to loan Weider and Vanderveer the sum of three million dollars (the "Loan"). (Am. Compl. ¶ 6.) Weider intended to invest the proceeds of the Loan into "Vanderveer Estates," a residential housing project in Brooklyn, New York, in which Weider and Konig were business partners. (Am. Compl. ¶ 7.) Pursuant to the Loan Agreement, Weider executed a promissory note (the "Note") dated December 31, 1998, in favor of Plaintiff, in the principal amount of three million dollars. (Am. Compl. ¶ 8). Interest on the Loan was to accrue at the annual rate of eleven percent, and the Loan Agreement required the Borrowers to make payments of $330,000, commencing on December 31, 1999, and continuing annually thereafter until the outstanding principal balance of the Loan was paid in full. (Loan Agreement ¶ 1.)[2] Upon default or maturity of the Loan, the Note bears interest at fifteen percent. (Am. Compl. ¶ 10.) Although neither the Loan Agreement nor the Note provides a date certain for repayment of principal, the Loan Agreement dictates that in the event of a sale of Vanderveer Estates, all sums due to Plaintiff pursuant to the Note would become due and owing, and Weider would pay Plaintiff ten percent of the net profits from the sale. (Am. Compl. ¶ 11.) On July 20, 1999 Plaintiff and Weider amended the Loan Agreement and Note to increase Plaintiff's percentage profit in the sale of Vanderveer Estates to thirteen percent. (Am. Compl. ¶ 12.) Defendants failed to make any payments pursuant to the Loan Agreement and the Note. (Am. Compl. ¶ 13.)

Plaintiff alleges that "on multiple occasions" between August 6, 2003 and March 29, 2007, Weider made numerous representations to Plaintiff regarding his repayment of the Loan.

---

[2] Although Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," this court may nevertheless consider the Loan Agreement in determining Defendants' motions to dismiss as "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991))

2

Specifically, Plaintiff asserts that Weider informed Plaintiff that: (1) Weider "and his business partner in the Vanderveer Project, Mr. Konig, were negotiating among themselves to arrange for the re-payment of all sums due Plaintiff," (Am. Compl. ¶ 14); (2) "Defendants had agreed to enter into an arbitration, whereby Mr. Konig's accountant, Abraham Roth of Roth & Company LLP [("Roth")], would serve as an arbitrator to either render an award or assist the Defendants in reaching an agreement between themselves to re-pay all sums due Plaintiff," (Am. Compl. ¶ 14); (3) "if Plaintiff would refrain from hiring an attorney and filing an action against the Defendants, the Defendants would re-pay all sums due Plaintiff upon the conclusion of the arbitration," (Am. Compl. ¶ 14); and (4) "once Mr. Roth had an opportunity to confirm that Plaintiff funded the loan described in the Loan Agreement and the Note, Mr. Roth would render a purported arbitration award or agreement requiring Mr. Konig to re-pay all sums due Plaintiff . . . ." (Am. Compl. ¶ 15.) Moreover, Plaintiff further alleges that on multiple occasions between August 6, 2003 and March 29, 2007, Roth repeatedly advised Plaintiff that: (1) he "was conducting the arbitration between Defendants regarding their re-payment of the Loan Agreement and the Note"; (2) Plaintiff "would be repaid through the arbitration process"; and (c) Plaintiff "should not hire an attorney or file any legal action and, instead, should rely upon the arbitration." (Am. Compl. ¶ 16.)

On March 29, 2007, in connection with the arbitration, Defendants entered into a written agreement (the "March Agreement"), by which, according to Plaintiff, "Defendants acknowledged the Loan Agreement and the Note and their respective intent to repay same[,] and . . . Mr. Konig expressly promised to repay the Loan Agreement and the Note, including all outstanding principal and accrued interest." (Am. Compl. ¶ 17.) Thereafter on May 17, 2007, Defendants entered into a second agreement (the "May Agreement") in which Defendants noted

3

that several parties "maintain that they have claims against Weider in connection with Vanderveer, including . . . Rafael Bild in connection with a $3,000,000 loan to Vanderveer in December of 1998." (May Agreement ¶ 2.) The May Agreement further provides that "Konig agrees to indemnify Weider for any actual monetary damages, costs and expenses, including reasonable attorney's fees, sustained by Weider in connection with and arising from any such claims." (May Agreement ¶ 2.)

On February 23, 2009, Plaintiff attended a meeting at Roth's office in Brooklyn, New York, where Weider and Roth communicated the contents of the March Agreement to Plaintiff. (Am. Compl. ¶ 19.) Following the meeting, Plaintiff continued to repeatedly question Weider as to when Plaintiff would be repaid. (Am. Compl. ¶ 21.) However, Weider told Plaintiff that "if Plaintiff hired an attorney, Defendants would not re-pay Plaintiff" and that he had consulted an attorney on Plaintiff's behalf and such attorney "recommended that Plaintiff refrain from filing suit and advised that, instead, Plaintiff should continue to seek re-payment through the purported arbitration and the [March] Agreement." (Am. Compl. ¶ 21.) Plaintiff alleges that based upon Defendants' representations, he refrained from filing suit against Defendants until December 21, 2009. (Am. Compl. ¶ 22.) As of December 31, 2009, the unpaid principal and accrued interest due pursuant to the Loan Agreement and Note is $13,957,174.19. (Am. Compl. ¶ 25.) Plaintiff asserts three causes of action in his Amended Complaint: (1) breach of the Loan Agreement by Weider; (2) breach of the Note by Weider; and (3) breach of the March Agreement by Konig.

II. Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a case should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support

4

of his claim which would entitle him to relief." Gould v. Lightstone Value Plus Real Estate Inv. Trust, Inc., 301 Fed. App'x 97, 99 (2d Cir. 2008) (citation omitted). A complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). See also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ortiz v. Cornetta, 557 F.3d 646, 649 (2d Cir. 1989). However, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Ashcroft, --- U.S. ----, 129 S.Ct. at 1949, 173 L.Ed.2d 868 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, ---U.S. ----, 129 S.Ct. at 1949, 173 L. Ed. 2d 868.

When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, and to matters of which judicial notice may be taken. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). "In addition, even if not attached or

incorporated by reference, a document upon which [the complaint] solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." Roth, 489 F.3d at 509 (internal quotation marks and citations omitted; alteration in original).

III. Analysis

A. Statute of Limitations

Defendants argue that Plaintiff's claims are barred by the statute of limitations. The determination of when a statute of limitations began to run is generally a factual one. See Bice v. Robb, 324 Fed. App'x 79, 81 (2d Cir. 2009) (reversing and remanding because the question of whether the statute of limitations had run "turns on a number of unresolved issues of fact that would benefit from discovery.") Thus, a "motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." Ortiz v. City of New York, No. 10 Civ. 3576, 2010 WL 5116129, at *1 (E.D.N.Y. Dec. 13, 2010). However, "where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). Accordingly, "unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." Allen v. Dairy Farmers of Am., Inc., No. 09-230, 2010 WL 3430833, at *24 (D. Vt. Aug. 30, 2010). On a motion to dismiss on statute of limitations grounds, a defendant has "the initial burden of demonstrating, prima facie, that the time within which to commence the action [has] expired." Santo B. v. Roman Catholic Archdiocese of N.Y., 51 A.D.3d 956, 957, 861 N.Y.S.2d 674 (N.Y. App. Div. 2008). If defendant so demonstrates, "the burden shift[s] to the plaintiff 'to aver evidentiary facts establishing that his . . . cause of action falls within an exception to the statute

of limitations, or raising an issue of fact as to whether such an exception applies.'" Id. (quoting Texeria v. BAB Nuclear Radiology, P.C., 43 A.D.3d 403, 405, 840 N.Y.S.2d 417 (N.Y. App. Div. 2007)).

"In diversity cases, 'state statutes of limitations govern the timeliness of state law claims', and state law 'determines the related questions of what events serve to commence an action and to toll the statute of limitations.'" Diffley v. Allied-Signal, Inc., 921 F.2d 421, 423 (2d Cir. 1990) (quoting Personis v. Oiler, 889 F.2d 424, 426 (2d Cir. 1989)). New York law provides for a six-year statute of limitations on actions arising from breach of contract. N.Y. C.P.L.R. 213(2). Thus, it is clear that Plaintiff's claim alleging that Konig breached the March Agreement, which was entered into in March 2007, is timely. The timeliness of Plaintiff's claims concerning the Loan Agreement and Note, however, may depend upon whether the Note is a demand note or an installment note. See Phoenix Acquisition Corp. v. Campcore, Inc., 81 N.Y.2d 138, 143, 596 N.Y.S.2d 752, 612 N.E.2d 1219 (N.Y. 1993) ("Demand and installment obligations are critically distinct in this context and warrant different considerations and results under the Statute of Limitations' microscope."). While the statute of limitations on a note payable upon demand begins to run at execution, see id., "with respect to a note payable in installments, . . . there are separate causes of action for each installment accrued, and the statute of limitations begins to run on the date each installment becomes due and is defaulted upon, unless the debt is accelerated." Sce v. Ach, 56 A.D.3d 457, 458, 867 N.Y.S.2d 140 (N.Y. App. Div. 2008). Thus, if the Note is a demand note, Plaintiff's action accrued upon the Note's execution on December 31, 1998, and was untimely as of December 31, 2004. If the Note is an installment note, however, Plaintiff's

action accrued on August 6, 2003, upon the sale of Vanderveer Estates,[3] and was untimely as of August 6, 2009. Thus, it is not necessary for this court to determine whether the Note is payable upon demand or in installments as Plaintiff's claims are untimely either way.

Plaintiff, nevertheless, attempts to bar the application of the statute of limitations by asserting that "Defendants' acknowledgement in the [March] Agreement of the debt owed to Bild under the terms of the Loan Documents tolled or restarted the statute of limitations." (Plaintiff's Opposition ("Pl. Op.") at 14.) Pursuant to New York General Obligations Law § 17-101, "[a]n acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules . . . ." N.Y. Gen. Ob. L. § 17-101 ("Section 17-101"). To revive the statute of limitations in accordance with Section 17-101, "the writing 'must recognize an existing debt and contain nothing inconsistent with an intention on the part of the debtor to pay it.'" Bendavid v. Bendavid, No. 97 Civ. 6758(DLC), 1997 WL 737678, at *1 (S.D.N.Y. Nov.28, 1997) (quoting Estate of Vengroski v. Garden Inn, 114 A.D.2d 927, 928, 495 N.Y.S.2d 200, 201 (2d Dep't 1985)). Both the acknowledgement of the existing debt, and the intent to repay the same, must be unconditional. See In re Brill, 318 B.R. 49, 55 (S.D.N.Y. 2004). According to Plaintiff, "the clear and unambiguous terms of the [March] Agreement contain defendants' acknowledgement of the debt owed to Bild under the terms of the Loan Documents, and Konig's agreement to repay that debt." (Pl. Op. at 15.) Yet, it is the timeliness of Plaintiff's claims against Weider, not

---

[3] This court may take judicial notice of the deed documenting the sale of Vanderveer Estates on August 6, 2003, recorded with the NYC Department of Finance, Office of the City Register. See Chateau Rive Corp. v. Enclave Development Associates, 22 A.D.3d 445, 447, 802 N.Y.S.2d 366 (N.Y. App. Div. 2005) (taking "judicial notice of the recorded deeds, maps, and site plans referable to those parcels, which, as public documents, evince indicia of authenticity and reliability").

Konig, which he attempts to revive by Section 17-101.[4] Thus, any acknowledgement for this purpose must be signed by Weider, not Konig, and contain an unconditional promise to pay by Weider, not Konig. See Morris Demolition Co. v. Board of Educ., 40 N.Y.2d 516, 521, 387 N.Y.S.2d 409, 355 N.E.2d 369 (N.Y. 1976) (noting the requirement that "the acknowledgment or new promise . . . be in a writing, signed by the party to be charged"); Burrowes v. Combs, 25 A.D.3d 370, 371, 808 N.Y.S.2d 50 (N.Y. App. Div. 2006) (declining to apply Section 17-101 to toll the applicable limitations period, because the alleged promises made by defendants "were not in writing signed by defendants, as required by General Obligations Law § 17-101"); Park Assoc. v. Crescent Park Assoc., Inc., 159 A.D.2d 460, 462, 552 N.Y.S.2d 314 (N.Y. App. Div. 1990) (holding that, as the acknowledgment must be signed by the party to be charged, the acknowledgment of a promissory note by the corporate defendant did not extend the statute of limitations as to the note's guarantors absent clear indication that corporate defendant was acting as agent of guarantors"). As the March Agreement contains neither Weider's promise to pay nor his signature, Section 17-101 does not operate to toll the statute of limitations.

Plaintiff further attempts to bar the application of the statute of limitations by contending that "defendants never informed Bild that the Vanderveer Estates were sold" and thus, "[p]ursuant to N.Y. C.P.L.R. § 203(g), defendants' concealment of the sale tolls the limitations period until the longer of (i) two years after the relevant facts are discovered, or (ii) the period otherwise provided by applicable statute." (P. Op. at 23.) According to Plaintiff, he "did not learn of the purported sale of Vanderveer Estates until initiating this action," and his claims are, therefore, timely. (Id.) However, Section 203(g) applies to those claims where the accrual is based upon the discovery of certain facts, and is traditionally used for cases alleging fraud. See

---

[4] Indeed, as noted supra, Plaintiff's claim against Weider is timely.

9

N.Y. C.P.L.R. § 203(g) (dictating the time for commencing an action "where the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered"). See also Ross v. Louise Wise Servs., Inc., 4 Misc.3d 279, 283-84, 777 N.Y.S.2d 618 (N.Y. Sup. Ct. 2004) ("[T]here is no authority to apply the discovery rule set forth in CPLR § 203(g) to . . . causes of action other than fraud . . . ."). However, Plaintiff's claims involve breach of contract, and "[u]nder New York law, breach of contract claims must be brought within six years of the alleged breach, regardless of whether plaintiff was aware at the time of the breach that he had a cause of action." Reznor v. J. Artist Management, Inc., 365 F.Supp.2d 565, 578 (S.D.N.Y. 2005) (citing Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 403, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993)). See also Cottonaro v. Southtowns, 213 A.D.2d 993, 993, 625 N.Y.S.2d 213 (N.Y. App. Div. 1995 ) ("Where allegations of fraud are only incidental to another cause of action, the fraud Statute of Limitations cannot be invoked."); Guild v. Hopkins, 271 A.D. 234, 244, 63 N.Y.S.2d 522 (N.Y. App. Div. 1946) (noting that the existence of a cause of action for breach of contract does not depend upon a plaintiff's knowledge that she has suffered an injury and "that she may not have discovered the wrongs complained of until long after they were committed is immaterial"). Even if Section 203(g) applied, Plaintiff nevertheless failed to allege that Defendants never informed him of the sale of Vanderveer Estates, or that he was diligent in his attempt to discover whether Vanderveer Estates had been sold. See Abercrombie v. Andrew College, 438 F. Supp. 2d 243, 267-268 (S.D.N.Y. 2006) (holding that plaintiff's claim of equitable tolling fails because he failed to allege due diligence because after the subject deed was recorded, "it became a public deed which Plaintiff easily could have discovered"). Accordingly, § 203(g) does not toll the statute of limitations.

Plaintiff's final attempt to bar the application of the statute of limitations consists of an allegation that Weider's "efforts to convince Bild not to bring suit – by communicating the terms of the settlement agreement to Bild and by repeatedly assuring Bild that defendants would repay him if he did not sue – equitably estop [Weider] from asserting the statute of limitations defense." (Pl. Op. at 2.) Equitable estoppel will "preclude a defendant from using the statute of limitations as a defense 'where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding.'" Putter v. North Shore University Hosp., 7 N.Y.3d 548, 552, 825 N.Y.S.2d 435, 858 N.E.2d 1140 (N.Y. 2006) (quoting Zumpano v. Quinn, 6 N.Y.3d 666, 673, 816 N.Y.S.2d 703, 849 N.E.2d 926 (N.Y. 2006). See also Robinson v. City of New York, 24 A.D.2d 260, 263, 265 N.Y.S.2d 566 (N.Y. App. Div. 1965) (noting that "where the agreement, representations or conduct of a defendant have caused a plaintiff to delay suit on a known cause of action until the statute of limitations has run, the courts will apply the doctrine of estoppel to prevent an inequitable use by the defendant of the statute as a defense"). To successfully invoke the doctrine of equitable estoppel, Plaintiff must demonstrate:

> (1) [Defendants] misrepresented some important facts; (2) that [he] relied upon the misrepresentation; (3) that this reliance caused [him] to delay filing of the lawsuit within the applicable limitations period; and, (4) that [he] thereafter commenced the action "within a reasonable time after the facts giving rise to the estoppel have ceased to be operational" (e.g., within the applicable limitations period as measured from the date plaintiff discovered the misrepresentation)

Lipp v. Con Edison, 158 Misc.2d 633, 635-36, 601 N.Y.S.2d 659 (N.Y. Civ.Ct. 1993) (quoting Simcuski v Saeli, 44 N.Y.2d 442, 449-50, 406 N.Y.S.2d 259 (N.Y. 1978)). See also DeGori v. Long Island R.R., 202 A.D.2d 549, 549-50, 610 N.Y.S.2d 815 (N.Y. App. Div. 1994) (noting that "a showing of fraud, misrepresentation, deception, or similar affirmative misconduct, along with reasonable reliance upon it, will justify the imposition of such an estoppel"). While

11

"settlement negotiations alone will not suffice to invoke the doctrine," Cranesville Block Co., Inc. v. Niagara Mohawk Power Corp., 175 A.D.2d 444, 445, 572 N.Y.S.2d 495 (N.Y. App. Div. 1991), a defendant "may be estopped from asserting the defense of the Statute of Limitations when it has by its conduct induced a party to postpone bringing suit on a known cause of action." Id. (quotations omitted).

In his Amended Complaint, Plaintiff alleges that on multiple occasions over the course of several years, Weider misrepresented to Plaintiff that: (1) he and Konig were arranging for repayment of the Note; (2) an arbitrator intended to require Konig to repay the Note; (3) Weider and Konig entered into an agreement acknowledging the Note and providing collateral for its repayment; and (4) an attorney who Weider consulted on Plaintiff's behalf advised that Plaintiff seek repayment through the Defedants' arbitration instead of filing suit. (Am. Compl. ¶¶ 14-21.) He further alleges that relying upon these misrepresentations, he allowed the limitations period to lapse. (Am. Compl. ¶¶ 22-23.) Finally, Plaintiff alleges that the misrepresentations continued until after February 23, 2009, despite his constant inquiries, and that he initiated the action less than one year later. (Am. Compl. ¶ 21.) Thus, accepting all of Plaintiff's allegations as true, and drawing all reasonable inferences in his favor, Plaintiff has pled sufficient facts indicating equitable estoppel to survive a motion to dismiss. See Drake v. Laboratory Corp. of America Holdings, No. 02-CV-1924, 2007 WL 776818, at * 8 (E.D.N.Y. Mar. 13, 2007) (denying defendants' motion to dismiss on statute of limitations grounds and holding that plaintiff's "allegations of defendants' purposeful concealment and his own due diligence during the period he wishes to toll are sufficient to state a claim for equitable estoppel"); Adams Book Co. v. Ney, No. 97-CV-4418, 1998 WL 564384, at *3-4 (E.D.N.Y. Jun. 30, 1998) (holding that allegations that defendant concealed his wrongdoing were sufficient to demonstrate equitable estoppel for

the purposes of a motion to dismiss); Niagara Mohawk Power Corp. v. Freed, 265 A.D.2d 938, 939, 696 N.Y.S.2d 600 (N.Y. App. Div. 1999) (holding that plaintiff, by alleging "that defendants induced it to refrain from commencing this action by misrepresentations and active concealment . . . set forth sufficient factual allegations of defendants' affirmative acts of deception to raise a triable issue of fact whether the doctrine of equitable estoppel should apply to toll the Statute of Limitations").

Although Weider argues that that Plaintiff has failed to allege that the promises made by Weider regarding repayment were fraudulent when made, a plaintiff asserting estoppel "need not prove that defendant is guilty of actual fraud or intent to deceive; whether he intended a wrong is immaterial." Arbutina v. Bahuleyan, 75 A.D.2d 84, 86, 428 N.Y.S.2d 99 (N.Y. App. Div. 1980). If "the agreement, representations or conduct of the defendant were calculated to mislead the plaintiff, and the plaintiff in reliance thereon failed to sue in time, this is enough." Robinson, 24 A.D.2d at 263. Insofar as he argues that Plaintiff failed to meet the heightened pleading standard for fraud required by Rule 9(b) of the Federal Rules of Civil Procedure, the "primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based . . . , safeguard[] defendant's reputation and goodwill from improvident charges of wrongdoing, . . . [and] inhibit the institution of strike suits." Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990). Thus, were Plaintiff asserting a cause of action of equitable estoppel, it is clear that Rule 9(b) would govern. See e.g., In re InSITE Services Corp., LLC, 287 B.R. 79, 86 (S.D.N.Y. 2002) (holding that a cause of action of equitable estoppel must comply with the heightened pleading requirements set forth in 9(b)). The equitable estoppel asserted by Plaintiff, however, "while equitable in nature, is not a cause of action or a defense-it is rather an equitable bar to the assertion of the affirmative defense of statute of limitations." Piacentino v. Quinn, 12

Misc.3d 1057, 1060, 816 N.Y.S.2d 674 (N.Y. Sup. Ct. 2006). Accordingly, Rule 9(b), governing pleadings, should not apply.[5] Finally, insofar as Weider contends that Plaintiff's Amended Complaint does not demonstrate either reasonable reliance on his statements or due diligence in bringing the action, such issues are typically "question[s] of fact that will 'necessarily depend on all the relevant circumstances.'" Lazzarino v. Warner Bros. Entertainment, Inc., 13 Misc.3d 1230(A), at *9, 831 N.Y.S.2d 354 (N.Y. Sup. Ct. 2006) (quoting Simcuski, 44 N.Y.2d at 448-49)). See also Local No. 4, Intl. Assn. of Heat & Frost & Asbestos Workers v. Buffalo Wholesale Supply Co., Inc., 49 A.D.3d 1276, 1278, 854 N.Y.S.2d 610 (2008) ("Although there are exceptions, the question of whether a defendant should be equitably estopped is generally a question of fact.") (quotations omitted). To be sure, it may sometimes be apparent from the face of a complaint that a plaintiff's reliance was not reasonable or that plaintiff did not act diligently, see Donahue-Halverson, Inc. v. Wissing Const. and Bldg. Services Corp., 95 A.D.2d 953, 954, 464 N.Y.S.2d 268 (N.Y. App. Div. 1983) (holding that a single vague assurance of repayment was "insufficient to justify any reasonable reliance thereon in plaintiff's failure to initiate the instant action for an additional three-year period"), but due to the number and nature of Plaintiff's allegations, such circumstances do not exist here. Accordingly, Defendants' motions to dismiss Plaintiff's Amended Complaint as barred by the statute of limitations are denied.[6]

---

[5] Indeed, the cases Weider cites to support his argument that Plaintiff has not met the requirements of Rule 9(b) do not support the argument that Rule 9(b) should apply an equitable bar to an affirmative defense. Instead, they primarily deal with federal claims, to which Rule 9(b) clearly applies, see Rombach v. Chang, 355 F.3d 164 (@d. Cir. 2004) (claiming federal securities violations), or state law causes of action of fraud in federal court to which Rule 9(b) also applies, see Alnwick v. European Micro Holdings Inc., 281 F.Supp.2d 629 (E.D.N.Y. 2003) (claims of fraudulent inducement); Skylon Corp. v. Guilford Mills, Inc., No. 93 Civ. 5581, 1997 WL 88894 (S.D.N.Y. Mar. 3, 1997 )(claims of fraudulent inducement).

[6] Due to this conclusion, the court need not reach Plaintiff's argument that the March Agreement and May Agreement constitute valid acknowledgements pursuant to Section 17-101 of New York's General Obligation Law which would restart the statute of limitations.

B. Third Party Beneficiary Claim

Konig moves to dismiss Plaintiff's claim that Konig breached the March Agreement, arguing that "Plaintiff's allegations do not even fulfill the basic requirements to establish a claim based upon third-party beneficiary" theory. (Konig's Memorandum ("K. Mem.") at 14.) A party asserting rights as a third-party beneficiary under New York law must establish that "(1) a valid and binding contract existed, (2) the contract was intended for the plaintiff[']s benefit, and (3) the benefit to the plaintiff is immediate (rather than incidental), indicating that the contracting parties intended to compensate the plaintiff." ACE Chrome Corp. v. IBEX Const., LLC, No. 08 Civ. 10401, 2009 WL 2482136, at *3 (S.D.N.Y. Aug. 13, 2009). See also Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 336, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983) (same). The "parties' intent to benefit the third party must be apparent from the face of the contract . . . [and] [a]bsent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to construe such an intent." LaSalle Nat'l Bank v. Ernst & Young LLP, 285 A.D.2d 101, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2001) (citations omitted). If the intent to benefit a third party is not shown, "the third party is merely an incidental beneficiary with no right to enforce the contract." Strauss v. Belle Realty Co., 98 A.D.2d 424, 426, 469 N.Y.S.2d 948 (N.Y. App. Div. 1983)

Plaintiff contends that he is the intended beneficiary of the March Agreement by virtue of paragraph three, which provides that "Weider and Konig both acknowledge the outstanding loan given by Rafael Bild on behalf of Vanderveer Estates Holding, LLC, for $3,000,000. . . . Konig agrees to fully satisfy the $3,000,000 outstanding loan." (March Agreement ¶ 3; Am. Compl. ¶ 41.) Konig, however, asserts that the terms of the March Agreement "evidence the parties'

15

intent not to have any third party beneficiaries." (Konig's Reply Memorandum at 14 (emphasis in original).) Indeed, the "Whereas" clauses of March Agreement, which provide that "Weider and Konig have previously agreed to submit to binding arbitration" with Roth, and that they "wish to specify some of Roth's powers and incorporate the provisions set forth herein into the Arbitration Agreement entered into by the parties on November 3, 2004," (March Agreement, recitals), suggest that Konig and Weider entered into the March Agreement to define the scope of the arbitration proceedings to which Plaintiff was not a party. See e.g., Jim Bouton Corp. v. Wm. Wrigley Jr. Co., 902 F.2d 1074, 1077 (2d Cir. 1990) ("Although the 'Whereas' clauses of a contract do not determine its operative effect, they do furnish a background in relation to which the meaning and intent of the operative provisions can be determined."). Likewise, the March Agreement provides that it "shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and/or assigns," (March Agreement ¶ 6(e)), indicating that Weider and Konig did not intend for any third party to benefit from the agreement. See Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 164 (S.D.N.Y. 1998) (noting that a contract should be interpreted to give meaning to all its provisions and that "language specifying that the benefit of a contract is to inure to the contract's signatories arguably is superfluous unless it serves to limit the category of beneficiaries") Even paragraph three, relied upon by Plaintiff, which speaks of a settlement offer with indeterminate repayment terms, suggests that the March Agreement was intended to govern the arbitration proceedings, not grant rights to Plaintiff. (March Agreement ¶ 3 (guaranteeing collateral "if loan is paid in installments" and directing Roth to "undertake[] to encourage and convince Bild to accept the settlement proposed to him by Konig") (emphasis added).) Although Plaintiff argues that "the defendants' intent to benefit Bild is confirmed by the numerous representations" made to Plaintiff

before and after the March Agreement's execution," (P. Op.at 9), the intent to benefit a third party must be clear from the face of the contract, not from the circumstances surrounding the contract's execution. See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 651 F.Supp.2d 155, 185 (S.D.N.Y. 2009) (holding that a defendant's repeated representations did not evidence an intent to permit a third party to enforce a contract where the contract itself did not evidence such intent). As the language of the March Agreement, taken as a whole, does not evidence an intent on the part of Defendants to benefit Plaintiff, he is not a third-party beneficiary thereunder. See Polesuk v. CBR Sys., Inc., No. 05 Civ. 8324, 2006 WL 2796789, at *15 (S.D.N.Y. Sept. 29, 2006) ("The best evidence of the contracting parties' intent as to whether a third party was an intended beneficiary to a contract, is the language of the agreement itself.")

Nor is Plaintiff a third party beneficiary pursuant to the May Agreement because the Defendants do not "manifest intent in the agreement to provide direct benefit" to Plaintiff.[7] Holloway v. Ernst & Young LLP, 28 Misc.3d 1214(A), 2010 WL 2927256, at *2 (N.Y. Sup. Ct. Jul. 21, 2010). The relevant provision in the May Agreement provides:

> Certain parties/vendors maintain that they have claims against Weider in connection with Vanderveer including, but not limited to, . . . Rafael Bild in connection with a $3,000,000 loan to Vanderveer in December of 1998. Konig agrees to indemnify Weieder for any actual monetary damages, costs and expenses, including reasonable attorneys' fees, sustained by Weider in connection with and arising from any such claim. Weider shall not be entitled to settle any such claim without Konig's prior written consent. Weider shall give Konig notice of any claim against Weider that may be covered by this Agreement and Konig shall be entitled to defend any such claim.

---

[7] Indeed, Plaintiff does not attempt to argue that he is a third party beneficiary of the May Agreement. His sole argument regarding this agreement is that it did not supersede the March Agreement because as the March Agreement's third party beneficiary, his rights could not be rescinded by a subsequent agreement. (Pl. Op. at 12.) However, in light of this court's determination that Plaintiff is not a third party beneficiary to the March Agreement, this argument is irrelevant.

(May Agreement ¶ 2.) The May Agreement does not contain a promise by either Weider or Konig to pay Plaintiff directly. Instead, it merely contains a promise by Konig to reimburse Weider in the event that Plaintiff successfully asserts a claim against Weider. See State Street Bank and Trust Co. v. Salovaara, 326 F.3d 130, 139 (2d Cir. 2003) (noting that "'indemnify' is clearly defined as a recoupment of expenses or losses incurred: '(1) To reimburse (another) for a loss suffered because of a third party's act or default. (2) To promise to reimburse (another) for such a loss'") (quoting Black's Law Dictionary 772 (7th ed. 1999)); Young v. Business Furniture, Inc., 195 A.D.2d 308, 309-10, 599 N.Y.S.2d 605 (N.Y. App. Div. 1993) (holding that plaintiffs could not claim "any benefit pursuant to the indemnification provisions of [defendant's] contract with the City, a contract to which they were not party and from which the law does not permit them to claim any benefit as third-party beneficiaries"). In fact, the language of the agreement suggests that Defendants anticipated not repaying Plaintiff, and such language cannot be construed as an intent to confer a benefit upon Plaintiff. Thus, any benefit Plaintiff may obtain from the May Agreement is merely incidental, and Plaintiff, therefore, is not a third party beneficiary of that agreement. Accordingly, Konig's motion to dismiss Plaintiff's third party beneficiary claim is granted.[8]

IV. Conclusion

For the foregoing reasons, Weider's motion to dismiss Plaintiff's claims asserting breach of the Loan Agreement and breach of the Note as time barred is denied, and Konig's motion to dismiss Plaintiff's third party beneficiary claim is granted.

---

[8] Pursuant to the terms of the May Agreement, Konig may nevertheless exercise his option to defend the claims against Weider if he wishes. (May Agreement ¶ 2.)

18

SO ORDERED.                                       s/ ARR

                                          _____
                                          Allyne R. Ross
                                          United States District Judge

Dated: February 10, 2011
Brooklyn, New York