UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
RAFAEL BILD,                                            :         09-CV-5576 (ARR) (VVP)
                                                        :
           Plaintiff,                                  :         OPINION AND ORDER
                                                        :
   -against-                                           :         NOT FOR PRINT OR
                                                        :         ELECTRONIC PUBLICATION
ABRAHAM WIEDER,                                         :
                                                        :
           Defendant.                                  :
                                                        :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

      On May 21, 2013, the Clerk of Court issued an amended judgment awarding plaintiff $3 million, plus prejudgment interests and costs. Dkt. # 288. The parties disagree as to: (1) whether Bild continued to be entitled to annual interest payments under the Loan Agreement and Promissory Note (together, "Loan Documents") following acceleration of Wieder's debt in 2003; and (2) if so, whether plaintiff is entitled to prejudgment interest on each of those post-acceleration interest payments. I conclude that the answer to both questions is "yes."

## I. BACKGROUND

      The Loan Agreement provides, in relevant part:

      1.    Interest on the Loan shall accrue at the annual rate of eleven (11%) percent and shall be payable as follows:
          Three Hundred Thirty Thousand and 00/100 ($330,000.00) Dollars shall be payable on the thirty first day of December, 1999 and annually thereafter until such time that the outstanding principal balance of the Loan has been repaid in full to the Lender.
      2.    Notwithstanding anything to the contrary contained in this Agreement all sums due to Lender hereunder shall be due and payable upon a sale of the premises known as Vanderveer Estates, Brooklyn, New York (the "Premises").
      . . . .
      5.    It is further agreed that any default under the terms of this Loan

1

> Agreement shall be a default under the terms of the Note. All of the terms, covenants, conditions and agreements contained in the Note are hereby made a part of this Loan Agreement.

Dkt. #289-1, at 2-3.

The Promissory Note further provides:

> In the event that Maker does not pay when due any of the payments required to be made by Maker hereunder, or in the event that Maker shall default under any of its obligations under the Mortgage, then, and in such event, Payee, at its sole discretion, may declare the entire outstanding principal balance of this Note, together with all interest accrued and unpaid thereon, to be due and payable.

Id. at 6.

The record contains no evidence that Bild affirmatively accelerated the debt at any point after Wieder's default. However, defendant argues that the loan was automatically accelerated pursuant to Section 2 of the Loan Agreement when Vanderveer Estates was sold as a result of bankruptcy in 2003. Dkt. #291 at 2-3. For the purposes of this order, the court assumes that the debt was, in fact, accelerated upon the 2003 transfer of Vanderveer in bankruptcy.

## II. DISCUSSION

The parties dispute whether Bild is entitled to: (1) continued annual interest payments under the terms of the Loan Documents following acceleration of the debt in 2003; and, if so, (2) prejudgment interest on each of these post-acceleration interest payments. The New York Court of Appeals' decision in NML Capital v. Republic of Argentina, 952 N.E.2d 482 (N.Y. 2011), is controlling as to both issues.

### A. NML Capital

In NML Capital, Argentina issued a series of "floating rate accrual notes" that were scheduled to mature in April 2005, when the principal would become fully due and payable to bondholders. Id. at 486. As the issuer, Argentina assumed the obligation of paying bondholders

2

"interest-only payments twice a year, on April 10 and October 10, 'until the principal hereof [wa]s paid or made available for payment.'" Id. In addition, the bond documents contained acceleration clauses that allowed bondholders to accelerate the due date of the principal in the event of a default by Argentina. Id. Following Argentina's default, the plaintiffs accelerated a portion of Argentina's debt in February 2005. The principal on the remaining notes became due on the April 2005 maturity date. Id. at 486-87.

Confronted with these circumstances, the Court of Appeals was asked to resolve: (1) "whether Argentina's obligation to make biannual interest-only payment to bondholders continued after maturity or acceleration of the indebtedness and," (2) "if so, whether the bondholders' were entitled to CPLR 5001 prejudgment interest on payments that were not made as a consequence of the nation's default." Id. at 486. The court answered both of these questions in the affirmative. Id. at 491-95.

In resolving the first question, the Court of Appeals underscored the contractual language requiring Argentina to make the biannual interest-only payments "until the principal hereof is paid or available for payment." Id. at 490. "By its terms," the court explained, "the contract contemplates that the bondholders are entitled to biannual interest payments until the principal is actually repaid in full—and not merely until the bond maturity date." Id. The court further observed that it was "unaware of any rule of New York law declaring that other terms of the contract not necessarily impacted by acceleration—such as an obligation to make biannual interest payments until the loan is repaid—automatically cease to be enforceable after acceleration." Id. at 492.[1] Insofar as "nothing in the bond documents indicates that the

---

[1] In doing so, the court distinguished the line of New York cases on which defendant relies. See id. at 492-93; Dkt. #291, at 1-2. As the court explained, the creditors in those cases were not allowed to collect post-acceleration interest because the interest was "unearned" insofar as it was typically "attributable to a period after the loan ha[d] been repaid, when the creditor [wa]s no longer lending its money but ha[d] reacquired it either through repayment or

3

payments were to stop in the event of acceleration of the debt," the Court of Appeals concluded, "it follows that Argentina's duty to make the payments continued after [plaintiff] accelerated $32 million of the debt in February 2005." Id. at 493.

Moving on to the second question, the Court of Appeals determined that "the bondholders [we]re entitled to prejudgment interest under CPLR 5001 on the unpaid biannual interest payments that were due—but were not paid—after the loans were either accelerated or matured on the due date." Id. at 494. In so holding, the court explained:

> [T]he function of prejudgment interest is to compensate the creditor for the loss of use of money the creditor was owed during a particular period of time. In this case, the biannual interest payments were designed to reimburse the bondholders for the loss of use of the principal during the relevant six-month time interval. The imposition of statutory interest on the unpaid interest payments compensates the bondholders for a different loss—the failure of the issuer to timely make the interest-only payments. If those interest payments had been made, the bondholders could have invested those funds, generating income. As a consequence of this default, plaintiffs are entitled to be compensated for the loss of the time value of that money—which can be accomplished only by awarding them statutory interest on the unpaid interest-only payments. Absent this component of damages, plaintiffs would be reimbursed only for their loss of use of the principal—and not for loss of use of the periodic interest payments, a separate injury.

Id. The court thus concluded that the plaintiff bondholders were entitled to prejudgment interest on the post-acceleration interest due under the bond documents. Id. at 495.

**B.     Application of NML Capital**

There is no meaningful way to distinguish this case from NML Capital. Just as how the bond documents in NML Capital required biannual interest-only payments until the principal amounts were fully paid, id. at 486, the Loan Documents here required annual interest-only payments "until such time the outstanding principal balance of the Loan has been repaid in full to

---

a foreclosure sale." Id. at 492 (emphasis added). In NML Capital, in contrast, "the principal has not been repaid and the biannual payments reflect interest that has already been earned (i.e., the interest in each unmade payment relates to a six-month interval between February 2005 and the judgment—a period when the loan remained outstanding)." Id. at 493. Here, as in NML Capital, the "principal has not been repaid," id.

4

the Lender," Dkt. #289-1, at 3.  And just as how in NML Capital "nothing in the bond documents indicate[d] that the payments were to stop in the event of acceleration of the debt," nothing in the Loan Documents here suggest that the interest payments were to cease upon acceleration of the debt.  Notably, the Loan Agreement specifies that the interest payments shall be made annually until the "Loan has been repaid in full," Dkt. #289-1, at 3—an occurrence that is independent of when the loan became "due and payable," id., which the court assumes happened upon the sale of Vanderveer.

Following the Court of Appeals' instruction that "contracts must be enforced according to the language adopted by the parties" under New York law, NMC Capital, 952 N.E.2d at 495, I therefore conclude that Bild continued to be entitled to annual payments of interest, as set forth in the Loan Documents, Dkt. #289-1, at 2-3, 6, following acceleration of the debt in 2003 upon the sale of Vanderveer in bankruptcy.

Like the plaintiff bondholders in NMC Capital, Bild is also entitled "to be compensated for the loss of the time value," 952 N.E.2d at 494, of the contractually-required interest.  "Absent this component of damages," Bild "would be reimbursed only for [his] loss of use of the principal—and not for loss of use of the periodic interest payments, a separate injury," id. Because Bild must be compensated for Wieder's failure timely to make the annual interest-only payments, plaintiff is entitled to prejudgment interest on those payments even after acceleration of the debt in 2003.

### III. Conclusion

Based on the foregoing, the judgment shall be amended once more, as attached, to reflect that Bild is entitled to recover from Wieder: (1) $3 million; (2) prejudgment interest on the $3 million at the rate of 11% from December 31, 1998 to December 31, 1999, and at the rate of 15%

from January 1, 2000 to the date of judgment; (3) prejudgment interest at the statutory rate of 9%, pursuant to New York Civil Practice Law and Rules §§ 5001 and 5004, on each of the interest payments owed by Wieder under the terms of the Loan Documents—including interest payments that continued to be due following the sale of Vanderveer in 2003; and (4) costs and attorneys' fees.

The Judgment Clerk is directed to calculate the proper amount of interest accordingly.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:   June 20, 2013
         Brooklyn, New York

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| Rafael Bild ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 09-cv-5576 |
| Abraham Wieder ) | |
| *Defendant* ) | |

## AMENDED JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☑ (1) three million dollars ($3,000,000); (2) prejudgment interest on the three million dollars at the rate of 11% from December 31, 1998 to December 31, 1999, and at the rate of 15% from January 1, 2000 to the date of judgment; (3) prejudgment interest at the statutory rate of 9%, pursuant to New York Civil Practice Law and Rules §§ 5001 and 5004, on each of the interest payments owed under the terms of the Loan Agreement and Promissory Note up to the date of judgment; and (4) costs and attorneys' fees.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____

☐ other:

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☑ tried by Judge Allyne R. Ross _____ without a jury and the above decision was reached.

☐ decided by Judge _____ on a motion for

Date: _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*