UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
:
RAFAEL BILD, :
: 09-CV-5576 (ARR) (VVP)
Plaintiff, :
: NOT FOR ELECTRONIC
-against- : OR PRINT PUBLICATION
:
MICHAEL KONIG, : OPINION AND ORDER
:
Defendant. :
:
------------------------------------------------------------------ X

ROSS, United States District Judge:

Plaintiff Rafael Bild commenced this action against defendants Abraham Wieder and Michael Konig in 2009, seeking to recover the principal and interest on a $3 million loan that Bild made to Wieder in 1998. Following a bench trial in April 2013, this court found Wieder liable to Bild for the principal and interest on the loan. Now before the court is Bild's claim against Konig. Bild asserts that Konig entered into a contract with Wieder in March 2007 in which Konig assumed responsibility for repaying Wieder's debt to Bild. Through this action, Bild seeks to enforce the March 2007 agreement between Wieder and Konig as a third-party beneficiary. The case is scheduled for a jury trial beginning on August 11, 2014.

Konig has moved to amend his answer to assert a defense of illegality. Bild opposes the motion. At this stage of the litigation, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue

1

prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

For the reasons set forth below, I find that Konig has shown undue delay in bringing the request to amend his answer. I also find that the proposed amendment would be futile because, as a matter of law, Konig cannot assert an illegality defense. Accordingly, Konig's motion to amend his answer to assert a defense of illegality is denied.

## DISCUSSION

### I. Proposed Illegality Defense

In the previous trial between Bild and Wieder, this court found that those parties entered into a loan agreement on December 31, 1998. May 15, 2013 Opinion and Order, Dkt. #285, at 7. Wieder executed a promissory note in favor of Bild in the principal amount of $3 million, with interest to accrue at an annual rate of eleven percent. Id. Bild brought suit for breach of the loan agreement and promissory note, and Wieder asserted that Bild's claim was barred by New York's six-year statute of limitations for contract actions. Id. at 1. After a bench trial in April 2013, the court found that Wieder was equitably estopped from asserting the statute of limitations defense and therefore found him liable to Bild for the entire $3 million principal balance on the loan along with interests and costs of collection. Id. at 56.

Bild is now seeking to enforce a March 2007 agreement between Wieder and Konig. The agreement stated, in relevant part: "Wieder and Konig both acknowledge the outstanding loan given by Rafael Bild . . . . Konig agrees to fully satisfy the $3,000,000 outstanding loan." Dkt. #322, Ex. D, at ECF 3. In exchange, the agreement entitled Konig to tax losses related to the

loan. Id. Bild argues that he is a third-party beneficiary of the March 2007 agreement and that Konig breached his obligation in it by failing to repay Wieder's debt to Bild.

Konig seeks to amend his answer to assert the defense of illegality. He argues that the underlying 1998 loan between Wieder and Bild was part of an unlawful scheme that renders the March 2007 agreement to repay the loan unenforceable. Konig relies on testimony from Bild's trial against Wieder in April 2013. Bild testified that he funded the loan to Wieder in part by transferring $1.6 million from the account of Commercial Consultants Ltd. (CCL), a corporation that Bild owned in Israel. Dkt. #322, Ex. C, at ECF 3. On cross-examination, Bild testified that he transferred money to CCL's account from Hampton International ("Hampton"), a Liberian corporation with an account in Switzerland. Id. at ECF 5-6. Bild testified that "some" of the money in the Hampton account came from his jewelry business, while "it could have been" that some of the money was inherited from his parents. Id. at ECF 6. He also testified that some of the business proceeds that he transferred to Hampton's account were not reported to the Internal Revenue Service ("IRS"). Id. He testified that "sometimes" when customers of his business paid him with checks, he sent the funds to overseas accounts and did not report the revenue to the IRS. Id. at ECF 11.

Konig asserts that this trial testimony demonstrates that Bild's $3 million loan to Wieder was part of a tax evasion and money laundering scheme. Bild argues that there is "no evidence in the record that Bild's loan served" a purpose of evading taxes or laundering funds. Dkt. #324 at 3. I emphasize that I make no finding regarding the truth of the allegations and consider only whether Konig should be given leave to assert the defense of illegality at trial.[1]

---

[1] Konig also asserts that the March 2007 agreement should be unenforceable on public policy grounds because the agreement "was designed to dupe Konig into paying Weider's personal debts." Dkt. #325 at 3. This is an entirely different argument from the proposed illegality defense based on alleged tax evasion and money laundering. Since Konig raised this argument for the first time in supplemental briefing and adduced no facts whatsoever in support of

**II.     Undue Delay**

Bild argues that Konig's request to amend his answer should be denied because Konig failed to assert an illegality defense at an earlier stage of this four and a half year litigation. I agree with Bild that Konig's request must be denied on the grounds of undue delay.

Under Rule 15(a), when a party seeks leave to amend the pleadings, the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Mere delay is not, of itself, sufficient to justify denial of a Rule 15(a) motion." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000) (internal quotation marks omitted). However, under Rule 16, the court is required to issue scheduling orders that "limit the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). A district court has discretion to deny leave to amend the pleadings after the deadline set by the scheduling order, unless the moving party can establish "good cause." Parker, 204 F.3d at 339. "[A] finding of 'good cause' depends on the diligence of the moving party." Id. at 340.

In this case, Bild filed the complaint against defendants Konig and Wieder on December 21, 2009. Dkt. #1. Konig filed an answer on March 24, 2010, in which he asserted a number of affirmative defenses but did not assert a defense of illegality. Dkt. #12.[2] On March 8, 2011, Magistrate Judge Viktor V. Pohorelsky entered a scheduling order setting a deadline of June 1, 2011 to file motions to amend the pleadings to add claims or defenses. Dkt. #76.

Konig has failed to show good cause for requesting to add a defense over three years after the deadline set by the scheduling order. He argues that he was not aware of the factual basis for the illegality defense at earlier stages of the litigation. Dkt. #322 at 2. He asserts that throughout discovery, "Bild repeatedly testified that he had no idea of the source of his funds . . . given to

---

it, I decline to consider it.
[2] On May 27, 2010, Bild filed an amended complaint. Dkt. #30. On May 26, 2011, Konig filed an answer that also did not raise the affirmative defense of illegality. Dkt. #90.

4

Wieder." Id. He also asserts that Bild "claimed he had no knowledge of his own tax returns and whether the [funds] were declared income or part of Bild's tax fraud." Id. Konig argues that he "attempted repeatedly . . . to obtain additional discovery regarding the source of Bild's money and his tax returns, but was repeatedly rebuffed by the Court." Id. at 5. Therefore, he argues, the facts underlying the proposed illegality defense came to light for the first time at Bild's trial against Wieder in April 2013, when Bild testified that he funded the loan from his overseas accounts and that he did not report all of his business income to the IRS. Id.

Konig's assertion that he first learned about facts relevant to an illegality defense from Bild's testimony at trial is simply untrue. The history of the protracted and highly litigious discovery process shows that Konig sought and received information regarding the source of the loan funds and Bild's tax returns. Through this discovery, he gained access to ample facts permitting at least the assertion of an illegality defense well before the summary judgment stage of the proceeding. To the extent that the court denied Konig's requests for additional discovery regarding Bild's offshore accounts or tax records, Konig's asserted justifications for the discovery he sought did not reasonably support his requests.

For example, Konig repeatedly justified his requests for additional discovery by contending that Bild had failed to prove that the $3 million loan was ever made. On June 9, 2011, Judge Pohorelsky granted Konig's request for discovery "concerning the existence of the loan, including how it was funded." Dkt. #96. Specifically, Judge Pohorelsky ordered Bild to disclose all documents relating to the sources of the $3 million paid to Wieder, finding that "the absence of sources would tend to prove that the loan was not made, or not made in the total amount claimed." Id. In a motion to compel on July 22, 2011, Konig asserted that "plaintiff has refused to provide any evidence that he loaned the alleged $3 million" and sought discovery of

5

Bild's tax returns to determine whether they reflected sufficient income to fund the loan. Dkt. #102 at 4. On August 1, 2011, Judge Pohorelsky ordered Bild to disclose tax returns for 1998, the year the loan was made, and 1999. Dkt. #106. Judge Pohorelsky found that "[t]he plaintiff's financial capacity to make a $3 million loan, as he alleges, is a central issue in this case, and as he is unable to demonstrate that capacity by direct evidence, his tax returns would likely disclose income or assets (or the lack thereof) that would bear on his financial capacity." Id. at 2. On September 12, 2011, Judge Pohorelsky ordered Bild to disclose financial statements and credit applications for the years 1998 and 1999. Dkt. #122. Judge Pohorelsky also allowed Konig to conduct a limited deposition of Bild's accountant regarding Bild's 1998 and 1999 tax returns, noting that "[t]he sole purpose of the deposition was to explore the plaintiff's financial capability to make the loan in question in this action." Dkt. #138 & 185.[3]

Once the fact that the loan was made was no longer in dispute, the court denied Konig's requests for additional discovery on that ground. On March 1, 2012, Konig filed a motion for sanctions alleging that Bild had produced information regarding the Hampton account after the discovery deadline. Dkt. #162. Judge Pohorelsky denied the motion, finding that, because the significance of the Hampton documents was "marginal at best," Konig had suffered no prejudice from the late disclosure: "The purpose of the [discovery] order was to require the plaintiff to produce documents reflecting that the loan was actually made, and the documents reflecting a

---

[3] Co-defendant Wieder sought additional years of Bild's tax returns for a reason completely unrelated to an illegality defense. Instead, Wieder argued that the additional tax returns were relevant to Wieder's main defense in the litigation: that the statute of limitations had expired on Bild's breach of contract claim regarding the 1998 loan. Wieder argued that additional tax returns could show that Bild had failed to bring the suit earlier because he was either making a deal with the IRS regarding his unreported income or waiting until the applicable statute of limitations for tax evasion had expired so he would not expose himself to potential criminal liability. Dkt. #150. At a hearing, Judge Pohorelsky denied the request for discovery of additional tax returns, finding the connection between Wieder's justification for the documents sought and his statute of limitations defense too speculative. Tr., Dkt. #158, at 81. I upheld Magistrate Judge Pohorelsky's order on appeal. Dkt. #176. Notably, Wieder's discovery request, similarly to the other related discovery issues, itself demonstrates that, despite defendants' awareness of potential tax improprieties during the discovery stage, neither took steps to assert an illegality defense justifying additional discovery of IRS records.

transfer of funds by CCL to the defendant was sufficient to establish such a transfer . . . . Ultimately, given the concession by the defendant Wieder that he did in fact receive the funds as a loan from the plaintiff, the Hampton documents are of little significance." Dkt. #186 at 2-3.

Konig also justified his requests for discovery regarding the loan funding on the ground that Bild would lack standing to bring the claim if a third party had funded the loan. At a discovery hearing on February 16, 2012, Konig's counsel sought additional discovery on the sources of the funds in the Hampton account because Konig had "no evidence that the plaintiff, Mr. Raphael Bild, ever gave a dime to Mr. Weider." Tr., Dkt. #158 at 37. Judge Pohorelsky allowed Konig to serve a limited subpoena on the bank in Switzerland regarding the ownership of the Hampton account, including the opening documents and signature cards, but denied discovery relating to the source of the funds in the account. Id. at 38-39. Konig appealed this limitation on discovery on the grounds that "[t]he source of funding is crucial . . . because if the loan was funded by a third party, Hampton, CCL or others, as per Bild's claim, then Bild does not have standing to assert this action as he has suffered no legally cognizant injury." Dkt. #163 at 18-19. This court upheld Judge Pohorelsky's order, finding that Konig's "assertion that plaintiff may lack standing based on where he obtained the funds allegedly loaned to Wieder is, at best, frivolous." Dkt. #176 at 2.

Well before the case reached the summary judgment stage, Konig's own filings with the court show that he was aware of all of the facts that he now asserts in support of his proposed illegality defense. Thus, by February 2012, even before the close of discovery, Konig had obtained sufficient information about Bild's purported illegality to conclude that (1) Bild's tax returns for 1998 and 1999 failed to report his interest in the two foreign bank accounts through which $1.6 million of the funds used to make the loan had passed, and (2) Bild's tax returns for

7

those years failed to disclose any substantial income that would support his assertion that third-party checks, money orders and cash were the sources for the remaining $1.4 million of the loan. Konig thus argued that these failures in Bild's tax reporting should preclude Bild from offering any evidence as to these two purported sources of funds for the loan. Dkt. #152 at 14-15. Indeed, Konig's counsel asserted at a discovery hearing that these facts suggested an "obvious money laundering scheme." Tr., Dkt. #158 at 37. Then, as part of his summary judgment motion in September 2012, Konig included in his statement of material, undisputed facts that: (1) Bild claimed he funded $1.6 million of the loan to Wieder from CCL; (2) Bild claimed CCL received over $1.6 million from the Hampton account in Switzerland; and (3) Bild did not disclose the CCL or Hampton accounts to the IRS. Dkt. #197, Ex. 2, ¶¶ 22, 33, 35-38. Yet, prior to his motion less than two weeks ago, Konig never sought to amend his answer to assert an illegality defense, nor did he rely on the alleged illegality of the contract as grounds for seeking additional discovery.

Since Konig was aware of all the facts necessary to move to amend his answer to assert an illegality defense well over two years ago, he cannot show good cause for failing to raise this defense until now, three years after the deadline set in the Rule 16 scheduling order. Accordingly, leave to amend is denied. See Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (upholding district court's denial of leave to amend when deadline in Rule 16 scheduling order had passed, discovery had been completed, and summary judgment motion was pending); Parker, 204 F.3d at 341 (upholding district court's denial of leave to amend where deadline in Rule 16 scheduling order had passed and plaintiff "had all the information necessary" to support the claim at an earlier stage of the litigation).

I would reach the same result even if no Rule 16 scheduling order governed this issue. Under Rule 15(a), "[t]he court . . . has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery." Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000) (internal quotation marks and citations omitted). "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). To determine whether amendment will cause prejudice, the court must consider whether allowing the moving party to assert the new claim would, inter alia, "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." Id.

Here, for the reasons already stated, Konig has offered no satisfactory explanation for waiting to assert an illegality defense until now, four years after the commencement of the litigation, after four years of discovery and summary judgment motion practice, with a trial date only six weeks away. Allowing Konig to assert a new defense at this late stage of the litigation would impose substantial prejudice on Bild. The parties might well need to re-open discovery, recall witnesses, and seek additional document disclosures, all of which would add further delay to proceedings that have already been unduly protracted.[4]

---

[4] It is true that two days ago, the court granted Bild's request for limited, expedited discovery regarding the issue of whether, during the pendency of this proceeding and subsequent appeal to the Second Circuit, Konig engaged in an arbitration and state court proceeding—neither of which had been disclosed to this court, the Second Circuit, or Bild—in which he may have taken an irreconcilably inconsistent position regarding the validity of a subsequent May 2007 agreement between Konig and Wieder. Dkt. #328. Unlike Konig's proposed illegality defense, however, the fact of these undisclosed proceedings was not revealed at all until a pre-trial conference a week ago, and no documents were disclosed to Bild until the day after the pre-trial conference.

Based on Konig's "inordinate delay" in seeking to amend his answer when he could have moved to do so years ago, coupled with the significant prejudice to Bild in the form of unduly onerous, increased expenses and delay, Konig's far belatedly sought motion for leave to amend his answer under Rule 15(a) is denied. McCarthy, 482 F.3d at 202 (upholding denial of leave to amend complaint where discovery had closed, defendant had filed for summary judgment, and nearly two years had passed since start of litigation); see Brown v. Quiniou, 467 F. App'x 13, 15 (2d Cir. 2012) (upholding denial of leave to amend complaint where plaintiff had waited four years and "gave no reasonable explanation for the delay"); MacDraw, Inc. v. CIT Grp. Equipment Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998) (upholding district court's denial of leave to amend complaint where discovery had closed, proposed claim would require additional discovery, and delay was "unexplained"); Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998) (upholding denial of defendant's motion to amend answer to assert counterclaims where relevant facts had been known to defendant for years, defendant had not offered sufficient reason for delay, and proposed amendments would require additional discovery and delay resolution of case); Zahra v. Town of Southfield, 48 F.3d 674, 686 (2d Cir. 1995) ("It was entirely reasonable for the district court to deny a request to amend a complaint that was filed two and one-half years after the commencement of the action, and three months prior to trial. In our view, this constituted undue delay.").

### III. Futility of Amendment

Even if Konig could show a justification for his delay in moving to assert an illegality defense, leave to amend his answer should nonetheless be denied. "One appropriate basis for denying leave to amend is that the proposed amendment is futile." Lucente v. IBM Corp., 310

10

F.3d 243, 258 (2d Cir. 2002). "An amendment to add an affirmative defense is futile when 'the proposed affirmative defense is not a defense to liability,' that is, 'when the proposed affirmative defense lacks a sound basis in law.'" In re Currency Conversion Fee Antitrust Litig., 264 F.R.D. 100, 118 (S.D.N.Y. 2010) (quoting Greenes v. Vijax Fuel Corp., 326 F. Supp. 2d 464, 466, 468 (S.D.N.Y. 2004)). Konig's proposed amendment is futile because, as a matter of law, Konig cannot assert an illegality defense based on any alleged impropriety in the loan from Bild to Wieder.

Under New York law, "[i]llegal contracts are, as a general rule, unenforceable." Lloyd Capital Corp. v. Pat Henchar, Inc., 603 N.E.2d 246, 247 (N.Y. 1992). In order to assert the defense of illegality, however, "[t]here must at least be a direct connection between the illegal transaction and the obligation sued upon." McConnell v. Commonwealth Pictures Corp., 166 N.E.2d 494, 497 (N.Y. 1960). "If the contract is merely collaterally rather than directly connected with the illegal act, the contract is valid." Contemporary Mission, Inc. v. Bonded Mailings, Inc., 671 F.2d 81, 83 (2d Cir. 1982).

Here, Konig cannot show the requisite "direct connection" between the alleged illegality and the obligation sued upon. The obligation sued upon in this action is the March 2007 agreement between Wieder and Konig, which Bild seeks to enforce as a third-party beneficiary. Under the terms of that agreement, both parties "acknowledge[d] the outstanding loan" given by Bild to Wieder. Konig agreed to repay Wieder's debt to Bild in exchange for consideration from Wieder in the form of $5 million in tax benefits resulting from losses sustained in the Vanderveer Estates venture. Konig has not asserted that there is anything illegal about his promise to repay another's debt, nor does he claim any illegality in the $5 million in tax benefits that he received in return for that promise. Rather, Konig alleges that Bild funded the underlying 1998 loan as

11

part of a scheme to use offshore accounts to evade taxes and launder money. This alleged illegality, even if true, would have no bearing on the legality of either Wieder's or Konig's performance under the separate March 2007 agreement, which was made between different parties and rests on independent, legal consideration. Konig cannot invoke the illegality defense in this action since any illegality in the 1998 loan is only "collaterally" related to the March 2007 agreement. Contemporary Mission, 671 F.2d at 84 (holding that, where plaintiff's receipt of a permit was a collateral part of the contract, "evidence dealing with whether [plaintiff] had engaged in illegal conduct in procuring the permit could properly be determined irrelevant, and thus excludable, at trial").

Konig cites no case in which a court held a contract to be unenforceable based on alleged illegality in a separate, independent transaction. Instead, Konig cites a number of cases where courts held facially valid contracts to be unenforceable because performance under the contract sued upon would be unlawful. See Sender v. Simon, 84 F.3d 1299, 1307-09 (10th Cir. 1996) (holding partnership agreement unenforceable where partnership operated as a vehicle for a Ponzi scheme); Kashfi v. Phibro-Salomon, Inc., 628 F. Supp. 727, 736-40 (S.D.N.Y. 1986) (holding contract unenforceable where services rendered under contract violated Iranian law); Anabas Exp. Ltd. v. Alper Indus., Inc., 603 F. Supp. 1275, 1278 (S.D.N.Y. 1985) (holding sales contract for stickers unenforceable because stickers unlawfully used Michael Jackson's image without his consent); McConnell, 166 N.E.2d at 497 (holding contract for services unenforceable where plaintiff agreed to negotiate motion picture distribution rights for defendant and procured those rights through bribery). Here, by contrast, Konig cannot show that the March 2007 agreement itself requires performance that is unlawful. Instead, his argument rests on Bild's allegedly unlawful conduct in funding the underlying loan to Wieder in 1998, over eight years

before the contract at issue here. Plainly, that alleged illegality is far too attenuated from the contract sued upon in this action to support an illegality defense.

Similarly, Konig asserts that New York courts have declined to enforce "facially legal contracts designed to avoid taxes." Dkt. #325 at 2. But in all of the cases Konig cites, the plaintiffs conceded that the contracts they sought to enforce were created for the very purpose of evading taxes.[5] In other cases, New York courts have rejected illegality defenses where the parties' alleged tax evasion was independent of the obligation being enforced. For example, in <u>Murray Walter, Inc. v. Sarkisian Bros., Inc.</u>, 486 N.Y.S.2d 396 (App. Div. 1985), shareholders of a corporation entered into a contract in which the plaintiff agreed to redeem the defendant's shares and both parties agreed to falsely report the transaction to the IRS. The court found that the reporting provision clearly violated federal tax law but nevertheless held a separate indemnification provision in the agreement to be enforceable because it "was not by itself illegal" and "was not given in exchange for an illegal act." <u>Id.</u> at 399; see also <u>Hilgendorff v. Hilgendorff</u>, 660 N.Y.S.2d 150, 151 (App. Div. 1997) (enforcing settlement regarding condominium ownership where "the contract at issue here is lawful on its face" and "any alleged tax fraud committed by the parties was wholly collateral to and independent of the contract's performance"). In this case, too, any alleged tax evasion in the funding of the loan is independent of the obligations that Bild seeks to enforce in the March 2007 agreement.

Konig also argues that enforcing the March 2007 agreement would violate public policy because it would require Konig, an assertedly "innocent third party," to assist in Bild's and

---

[5] Therefore, contrary to Konig's assertion, the court did not confront "markedly similar facts" in <u>Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.</u>, No. 05 Civ. 9640(PKL), 2009 WL 935665 (S.D.N.Y. Apr. 7, 2009). In that case, the party seeking to enforce an oral agreement conceded that "the sole purpose of the purported oral agreement was to evade plaintiff's tax liability to the IRS." <u>Id.</u> at *18. The court held that "such an agreement to conceal assets and avoid tax liability would be void and unenforceable under New York state law." <u>Id.</u> Here, of course, Bild certainly does not concede that the sole purpose of the 1998 loan was to evade taxes—but even so, the agreement he is seeking to enforce is not the 1998 loan, but the March 2007 agreement between Wieder and Konig by which Konig agreed to repay Wieder's debt in exchange for $5 million in tax benefits.

Wieder's allegedly illegal scheme.[6] However, New York courts have made clear that the defense of illegality is disfavored where a "defaulting party seeks to raise illegality as a sword for personal gain rather than a shield for the public good." Lloyd Capital Corp., 603 N.E.2d at 248 (internal quotation marks omitted). For example, in Southwestern Shipping Corporation v. National City Bank of New York, 160 N.E.2d 836 (N.Y. 1959), the plaintiff orchestrated a scheme to evade Italian foreign exchange licensing requirements. As part of the unlawful scheme, the parties directed the defendant bank to transfer funds from one account to another, but the bank mistakenly issued the funds directly to an individual who "absconded" with the money. Id. at 839. In a suit by the plaintiff to recover the funds, the New York Court of Appeals held that the bank, as the "mere agent or depository of the proceeds of an illegal transaction," could not rely on the defense of illegality. Id. As its rationale, the court explained, "The law seems clear that defendant may not escape from its contractual liability and the consequences of its own negligence, by asserting the illegality of the antecedent agreement by reason of which it received the proceeds." Id. at 840. Here, Konig did not act as a depository of the funds in question, but the facts are nevertheless sufficiently analogous to render the case instructive. Konig made an independent promise to repay Wieder's loan in return for tax benefits. He now seeks to raise the defense of illegality because he alleges that the loan was part of an illegal tax evasion and money laundering scheme. If permitted to amend his answer to assert an illegality defense, Konig would not be relying on the defense as a shield to protect the public interest. Rather, he would be wielding it as a sword to avoid personal liability on a contract whose

---

[6] In the parties' Final Joint Pretrial Order, Konig also argues that "it is . . . against public policy to force Konig to indemnify Weider because Weider and Bild both have unclean hands by knowingly attempting to lure Konig into indemnifying Weider's alleged personal debt—a debt which was a tax fraud and money laundering scheme." Dkt. #329 at 6-7. Konig's assertion of this defense in the pre-trial order appears to be no more than a restatement of his illegality claim, which the court is hereby precluding. To the extent that Konig seeks to invoke the "unclean hands" doctrine, a defense asserted in his answer, I note that the "unclean hands" doctrine is a defense to a claim for equitable relief and appears to have no relevance here, where Bild asserts a breach of contract claim against Konig and seeks monetary damages. This is an issue that the parties may wish to address as part of their in limine motions.

14

benefits he has already received. Following the approach of the New York Court of Appeals in Southwestern Shipping Corporation, this court will not allow Konig to receive an undeserved "windfall" and avoid his obligations under the March 2007 agreement based on the alleged illegality of the antecedent loan to which he was not a party. Id. at 841; see also Globaltex Grp. Ltd. v. Trends Sportswear Ltd., No. 09-CV-0235, 2010 WL 1633438, at *4 (E.D.N.Y. Apr. 21, 2010) (declining to allow illegality defense where it would "confer an undeserved windfall on defendants"); Lloyd Capital Corp., 603 N.E.2d at 248 (same).

Finally, to the extent that Konig characterizes the alleged conduct as a money laundering scheme, amendment of his answer to assert an illegality defense would be futile for an additional reason: Konig's argument is based on a misapprehension of the law. To constitute money laundering, an individual must conduct a financial transaction or money transfer using the "proceeds of specified unlawful activity" for the purpose of promoting that unlawful activity, engaging in tax evasion, concealing the source of the funds, or avoiding a reporting requirement. 18 U.S.C. § 1956(a).[7] Konig asserts that it is "well settled in this Circuit that Bild's tax evasion is a predicate act—which is the basis for criminal money laundering." Dkt. #325 at 3. In fact, it is well settled that, although tax evasion may be the purpose of promotion money laundering, see 18 U.S.C. § 1956(a)(1)(A)(ii), tax evasion is not a "specified unlawful activity" that could constitute the predicate of a concealment money laundering offense. See United States v. Miller, 26 F. Supp. 2d 415, 429 (N.D.N.Y. 1998) ("[Defendants] correctly note that tax evasion is

---

[7] Konig asserts that the conduct was both domestic and international money laundering. The money laundering statute makes it a crime to conduct or attempt to conduct a financial transaction with the "proceeds of specified unlawful activity" with: (1) "intent to promote the carrying on of specified unlawful activity"; (2) intent to engage in tax evasion or tax fraud; or (3) knowledge that the transaction is designed to conceal the nature or source of the funds or to avoid a transaction reporting requirement under state or federal law. 18 U.S.C. § 1956(a)(1). The statute also makes it a crime to transfer or attempt to transfer funds between a place in the United States and a place outside the United States with: (1) "intent to promote the carrying on of specified unlawful activity"; or (2) knowledge that the funds represent "the proceeds of some form of unlawful activity" and that the transfer is designed to conceal the source of the funds or to avoid a transaction reporting requirement. 18 U.S.C. § 1956(a)(2).

conspicuously absent from the enumerated list of specified unlawful activities.") (citing 18 USC 1956(a)(1)(A), 1956(c)(7)). The authorities that Konig cites do not hold that tax evasion alone falls within the money laundering statute; rather, they hold that tax evasion can be the aim of a wire or mail fraud scheme, which in turn can be the predicate for a money laundering offense. See Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004) (upholding promotion money laundering conviction based on wire fraud scheme to smuggle cigarettes between Canada and the United States to evade tobacco taxes and then reinvest the profits in more cigarettes used to perpetuate the scheme); Miller, 26 F. Supp. 2d at 429 ("[I]t is not tax evasion alone that brings the alleged conduct of defendants within the chargeable scope of money laundering; rather, it is the alleged fraudulent scheme that falls within the scope of the wire fraud statute and the other elements of the money laundering statute.").[8]

Konig's money laundering argument therefore rests on the mistaken premise that tax evasion alone can be the predicate for a money laundering offense. He asserts, without discernible record support, that Bild evaded paying taxes on the full $3 million that he loaned to Wieder by transferring $1.6 million from Hampton to CCL and then to Wieder, and "smuggling" the remaining $1.4 million to Wieder through "third-party checks, cash and money orders." Dkt. #325 at 1. He then asserts, in loose and unexplained terms, that Wieder somehow "launder[ed]" the money from Bild's loan through Wieder's company, all of which Konig characterizes as "a textbook scheme to launder money to avoid taxes." Id. Despite repeated opportunities to develop these claims, Konig has been unable or unwilling to specify how, in fact, the alleged actions fall

---

[8] The other cases that Konig cites in support of his money laundering argument are wholly inapposite. In United States v. Helmsley, 941 F.2d 71 (2d Cir. 1991), cert. denied, 502 U.S. 1091 (1992), the defendant was charged with tax evasion and mail fraud, not money laundering. Ritter v. Klisivitch, No. 06-CV-5511 (DRH)(WDW), 2008 WL 2967627 (E.D.N.Y. July 30, 2008), addressed a civil RICO conspiracy claim at the motion to dismiss stage. The court denied a motion to dismiss a money laundering claim not based on tax evasion but on "other unlawful acts alleged in the pleading." Id. at *9. Finally, United States v. Kalust, 249 F.3d 106 (2d Cir. 2001), which considered sentencing challenges by a defendant who laundered the proceeds of sales of stolen automobile airbags, has no relation to the facts of this case.

16

within the federal money laundering statute. It is not incumbent upon the court to attempt to discern Konig's argument based such conclusory assertions. Moreover, as discussed above, Konig cannot assert an illegality defense based on money laundering in any event, both because of undue delay and because the defense would be futile as a matter of law.

## CONCLUSION

For the foregoing reasons, I conclude that Konig has shown undue delay in bringing a defense of illegality and that, in any event, his defense would be futile. Accordingly, Konig's motion to amend his answer to assert a defense of illegality is denied.

SO ORDERED.

\_\_/s/_____
Allyne R. Ross
United States District Judge

Dated: July 3, 2014
Brooklyn, New York